## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| JUDICIAL WATCH, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 04-301 (RMU) |
| | : | | |
| v. | : | Document Nos.: | 30, 31, 33 |
| | : | | |
| DEPARTMENT OF THE ARMY, | : | | |
| | : | | |
| Defendant, | : | | |
| | : | | |
| KELLOG BROWN & ROOT, INC., | : | | |
| | : | | |
| Intervenor. | : | | |

### MEMORANDUM OPINION

**GRANTING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT;
GRANTING THE INTERVENOR'S MOTION FOR RECONSIDERATION; ISSUING REVISED
ORDER AUTHORIZING THE DEFENDANT TO WITHHOLD CERTAIN DOCUMENTS**

## I.    INTRODUCTION

The plaintiff, Judicial Watch, Inc., is a nonprofit group seeking documents from the

Department of the Army, pursuant to the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA").

Claiming that documents sought are properly withheld under Exemption 5 of FOIA, the defendant

moved for summary judgment.  The court granted in part and denied in part the defendant's

motion, deferred ruling as to certain documents that the defendant had failed to produce for *in*

*camera* review, and ordered the defendant to produce these documents to the court for review.

Mem. Op. (May 31, 2006).  Having conducted this review, the court now rules that the defendant

properly classified documents CE4431, CE5352-CE5385, CE5554, and CE6755-CE6756 under

Exemption 5 and grants the defendant's motion for summary judgment as to these documents.

Meanwhile, intervenor Kellogg Brown & Root ("KBR"), moves for reconsideration of this

court's May 31, 2006 order requiring the defendant to turn over certain documents containing

communications between KBR and the defendant.  KBR claims that the defendant failed to

provide these documents to KBR to review.  Thus, KBR argues, it did not have an opportunity to

assert exemptions prior to the court's ruling.  Upon examining these documents, KBR claims that

they include confidential business information protected from disclosure under Exemption 4 of

FOIA.  KBR requests that the court reconsider its previous order pursuant to Federal Rule of Civil

Procedure 54(b).  Because the interests of justice weigh in favor of reconsideration, the court

grants the intervenor's motion.  The court has reexamined these documents and now rules that

they are properly withheld under Exemption 4.  Accordingly, the court issues a revised order

authorizing the defendant to withhold those documents under FOIA Exemption 4.

## II.   BACKGROUND[1]

After the United States-led invasion of Iraq in March 2003, the Army awarded a no-bid

oil well firefighting contract to KBR, a subsidiary of Halliburton Company.  Vice-President

Richard Cheney previously served as Halliburton's Chief Executive Officer and Chairman of the

Board.  Pl.'s Opp'n to Def.'s Mot. for Summ. J.  ("Pl.'s Opp'n") at 1.  The plaintiff theorizes that

the Vice President's past associations with Halliburton implicate a conflict of interest and sent

two FOIA requests to the defendant to corroborate its theory.  *Id.* at 1-2 (citing Michael

---

[1]     The court has previously set forth in detail the background of this case.  Mem. Op. (Nov. 17, 2005), Mem. Op. (May 31, 2006).

Shanyerson, *Oh! What a Lucrative War,* Vanity Fair, April 2005, at 138).[2]  After receiving no

response by February of the following year, the plaintiff filed the instant lawsuit.  Compl. ¶ 5.  On

March 19, April 19, and December 13, 2004, the defendant provided the plaintiff with documents

in response to its request, withholding 1,312 pages in full from production and withholding in part

4,819 pages of documents.  Def.'s Mot for Summ. J. ("Def.'s Mot."); Pl.'s Mot. at 4.

Pursuant to a joint stipulation reached by the parties in April 2005, the plaintiff limited its

claims to documents withheld under Exemptions 5 and 6.  Accordingly, the defendant limited its

motion for summary judgment to information withheld pursuant to these two exemptions.

On November 17, 2005, the court granted the defendant's motion for summary judgment

as to information withheld pursuant to Exemption 6.  Mem. Op. (Nov. 17, 2005) at 15.  Because

of inaccuracies in the defendant's FOIA assertions, the court further ordered the defendant to

produce documents withheld pursuant to Exemption 5 for *in camera* review.  *Id*. at 11.  On May

31, 2006, the court denied the defendant's motion for summary judgment as to several documents

and ordered the defendant to produce these documents to the plaintiff.  Mem. Op. (May 31, 2006)

---

[2]     The plaintiff's first request, on April 6, 2003, sought information pertaining to "the decision of the U.S. Army to grant the contract to KBR without a bidding process . . . [t]he decision to request KBR to draft and/or "draw up" contingency plans for existing oil well fires in Iraq . . . [and t]he time limit(s) and dollar limit(s) of the contract."  Compl. ¶ 5.  The plaintiff's second request, on June 16, 2003, sought information pertaining to "the decision of the U.S. Army to grant a contract to [KBR] to restart Iraq's oil production leading up to and after the 2003 Iraq War (January 1, 2003 through June 15, 2003), including but not limited to: Contract costs, deadlines, compensation, spending limits, and bonus scales[, and m]onthly cost overruns, costs per month, itemized reports of all activities billed to the U.S. Government concerning KBR's (or any related subsidiary including the parent company of Halliburton) activities in Iraq between February 1st, 2003 to June 16th, 2003. . . and all information or correspondence related to the replacement of KBR's original contract estimated to happen on or about August 2003."  *Id.* ¶ 14.

at 9-14.  The court also ordered the defendant to produce documents that the defendant previously

had not provided to the court for *in camera* review and granted the defendant's motion for

summary judgment with regard to documents falling within Exemption 5.[3]  *Id.* at 14-15.

On June 6, 2006, the defendant produced most of the documents previously withheld for

*in camera* review.  The defendant continued to withhold certain documents claiming that two of

them were misnumbered and did not exist and that it could not find an unredacted version of a

third document.  Def.'s Resp. to the Ct.'s May 31, 2006 Order ("Def.'s Resp. to Ct.'s Order") at

1-2.

On June 9, 2006, intervenor KBR filed a motion for the court to reconsider its May 31,

2006 order with regard to documents CE567-CE576 and CE6610-CE6619.  Intervenor's Mot. for

Recons. of May 31, 2006 Order ("Intervenor's Mot.") at 1.  Specifically, KBR claims that these

documents, which are communications between KBR employees and the defendant, contain

confidential commercial and financial information that is protected from production under

Exemption 4.  *Id*.  KBR claims that, "for reasons that are unclear," the defendant did not

previously provide these documents for KBR "to ascertain whether they contained confidential,

proprietary, or trade secret information of the kind that required application of the Exemption 4."

---

[3]     Specifically, the court ordered the defendant to produce the following documents
because they do not implicate the deliberative-process privilege: CE523-524,
CE555, CE580-585, CE3720, CE2539-2588, CE6838, CE6871-6873, and
CE6899.  The court further ordered the defendant to produce the following
documents because they involve communications outside of the agency: CE484-
485, CE486-487, CE567-576, CE5242-5244, CE5245-5246, and CE6610-6619.
Additionally, the documents that the defendant failed to initially produce for *in
camera* review are: CE545, CE4431, CE5352-5385, CE5554, CE5919, and
CE6755-6756.  Finally, the court concluded that the defendant's *Vaughn* index
was accurate and that nondisclosure was justified with regard to the remaining
documents.  Mem. Op. (May 31, 2006) at 14-15.

*Id.* at 3.  As a result, KBR argues that it was unable to raise any exceptions before the court's *in camera* review.  *Id.*  Instead, the Army objected to these documents only under Exemption 5 and provided these documents for KBR to review only after the court issued its May 31, 2006 ruling ordering disclosure.  *Id.*  With its motion, KBR filed a declaration by Christopher Heinrich, Vice President of the Legal Department for the Government Infrastructure Division of KBR. Intervenor's Mot., Ex. A ("Heinrich Decl.").  In his declaration, Heinrich attests to the confidential nature of these documents and the reason KBR provided them to the defendant. Heinrich Decl. ¶ 3-5.

On June 12, 2006, the defendant notified the court that the defendant had decided to disobey the court's May 31, 2006 order and not produce the documents at issue in KBR's motion to reconsider.[4]  Def.'s Notice of Partial Produc. of Docs. at 1.  On June 19, 2006, the plaintiff filed an opposition to KBR's motion for reconsideration.  Pl.'s Opp'n to Intervenor KBR's Mot. for

---

[4]      It is regrettable that the defendant has *sua sponte* flouted the court's order instead of following proper procedure of, for example, moving for a stay.  The court is puzzled by the defendant's statement that "[s]hould the [c]ourt wish [the] defendant to immediately release these remaining documents, [the] defendant will of course comply," as if the court's May 31, 2006 order was an insufficient instruction for the defendant to do just that.   Just as the court would never expect the Army to seek its guidance in military strategy, the court does not need the guidance of the Army as to the efficacy of its rulings.  *Orloff v. Willoughby*, 345 U.S. 83, 93-94 (1953) (stating that "judges are not given the task of running the Army," and that "[o]rderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters").  Assuming attorney inexperience or incompetence, rather than wilful obstruction, the court will not issue sanctions pursuant to Rule 11.

The document production in this case stemmed from the government's failure to accurately describe its documents in its *Vaughn* index.  Mem. Op. (Nov. 17, 2006).  Now, the government demonstrates its lack of familiarity with the Federal Rules of Civil Procedure.  The next misstep will invite sanctions.

Recons. ("Pl.'s Opp'n") at 1.  The defendant responded to the plaintiff's opposition on May 28, 2006.  Def.'s Resp. to Pl.'s Opp'n at 1.  KBR filed a reply to the plaintiff's opposition on June 29, 2006.  Intervenor's Reply Pl.'s Opp'n ("Intervenor's Reply") at 1.  The court now addresses both the defendant's motion for summary judgment with regard to the documents that it initially failed to produce for *in camera* review and the intervenor's motion for the court to reconsider its May 31, 2006 order.

### III.   ANALYSIS

#### A.   The Court Grants the Defendant's Motion for Summary Judgment as to the Remaining Documents Withheld Under Exemption 5

##### 1.   Legal Standard for Summary Judgment in FOIA Proceedings

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  In deciding whether there is a genuine issue of material fact, the court is to view the record in the light most favorable to the party opposing the motion, giving the non-movant the benefit of all favorable inferences that can reasonably be drawn from the record and the benefit of any doubt as to the existence of any genuine issue of material fact.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157-59 (1970).  To determine which facts are "material," a court must look to the substantive law on which each claim rests.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the

outcome of the action.  *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

FOIA affords the public access to virtually any federal government record that FOIA itself does not specifically exempt from disclosure.  5 U.S.C. § 552; *Vaughn v. Rosen*, 484 F.2d 820, 823 (D.C. Cir. 1973).  FOIA confers jurisdiction on the federal district courts to order the release of improperly withheld or redacted information.  5 U.S.C. § 552(a)(4)(B).  In a judicial review of an agency's response to a FOIA request, the defendant agency has the burden of justifying nondisclosure, and the court must ascertain whether the agency has sustained its burden of demonstrating that the documents requested are exempt from disclosure under FOIA.  5 U.S.C. § 552(a)(4)(B); *Al-Fayed v. CIA*, 254 F.3d 300, 305 (D.C. Cir. 2001); *Summers v. Dep't of Justice*, 140 F.3d 1077, 1080 (D.C. Cir. 1998).  An agency may meet this burden by providing the requester with a *Vaughn* index, adequately describing each withheld document and explaining the exemption's relevance.  *Summers*, 140 F.3d at 1080; *Vaughn*, 484 F.2d 820 (fashioning what is now commonly referred to as a "*Vaughn* index").

The court may grant summary judgment to an agency on the basis of its affidavits if they:

[(a)] describe the documents and the justifications for nondisclosure with reasonably specific detail, [(b)] demonstrate that the information withheld logically falls within the claimed exemption, and [(c)] are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.

*Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).  While an agency's affidavits are presumed to be in good faith, a plaintiff can rebut this presumption with evidence of bad faith.  *SafeCard Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citing *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)).  But such evidence cannot be comprised of "purely speculative claims about the existence and discoverability of other documents."  *Id.*

## 2.    Legal Standard for Exemption 5

Exemption 5 of FOIA protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).  The Supreme Court and the D.C. Circuit both have construed Exemption 5 to "exempt those documents, and only those documents, normally privileged in the civil discovery context." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975); *Martin v. Office of Special Counsel*, 819 F.2d 1181, 1184 (D.C. Cir. 1987).  In other words, Exemption 5 incorporates "all civil discovery rules." *Martin*, 819 F.2d at 1185.  Thus, all discovery privileges that exist in civil discovery apply to Exemption 5.  *United States v. Weber Aircraft Corp.*, 465 U.S. 792, 800 (1984).  The three traditional privileges that courts have incorporated into Exemption 5 are the deliberative-process privilege, the attorney work-product privilege, and the attorney-client privilege.  *Sears*, 421 U.S. at 149.  At issue in this case are the deliberative-process and the attorney-client privileges invoked by the defendant.

The general purpose of the deliberative-process privilege is to "prevent injury to the quality of agency decisions." *Sears*, 421 U.S. at 151.  The three specific policy objectives underlying this privilege are: (1) to encourage open, frank discussions on matters of policy between subordinates and superiors; (2) to protect against premature disclosure of proposed policies before they are finally adopted; and (3) to protect against public confusion that might result from disclosure of reasons and rationale that were not in fact ultimately the grounds for an agency's action.  *Russell v. Dep't of Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982); *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980); *Jordan v. Dep't of Justice*, 591 F.2d 753, 772-73 (D.C. Cir. 1978) (en banc).  In essence, the privilege protects the "decision making processes of government agencies and focus[es] on documents reflecting

advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Sears*, 421 U.S. at 150 (internal quotations omitted).  Thus, the deliberative-process ensures that government agencies are not "forced to operate in a fishbowl." *Petroleum Info. Corp. v. Dep't of the Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992).

       To invoke the deliberate-process privilege, the defendant must establish two prerequisites. *Id.*  First, the communication must be "predecisional;" in other words, it must be "antecedent to the adoption of an agency policy." *Jordan*, 591 F.2d at 774; *Access Reports v. Dep't of Justice*, 926 F.2d 1192, 1194 (D.C. Cir. 1991).  In determining whether a document is predecisional, an agency does not necessarily have to point specifically to an agency's final decision, but need only establish "what deliberative-process is involved, and the role played by the documents in issue in the course of that process." *Coastal States*, 617 F.2d at 868.  In other words, as long as a document is generated as part of such a continuing process of agency decision-making, the deliberative-process protections of Exemption 5 may be applicable. *Id.*; *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 39 (D.C. Cir. 2002) (holding that a document is predecisional if it was prepared to assist an agency in arriving at a decision, rather than supporting a decision already made).

       Second, the communication must be deliberative; it must be "a direct part of the deliberative-process in that it makes recommendations or expresses opinions on legal or policy matters." *Vaughn*, 523 F.2d at 823-24.  The critical factor in determining whether the material is deliberative in nature "is whether disclosure of the information would 'discourage candid discussion within the agency.'" *Access Reports*, 926 F.2d at 1195 (quoting *Dudman Communications Corp. v. Dep't of Air Force*, 815 F.2d 1565, 1567-68 (D.C. Cir. 1987).

The attorney-client privilege protects "confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice." *Mead Data Cent., Inc.*, 566 F.2d at 252. The rationale underlying the privilege is that lawyers will be best able to advocate and offer advice if they are "fully informed by the client." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).

Unlike the attorney work-product privilege, the attorney-client privilege is not limited to the context of litigation. *See, e.g., Mead Data Cent., Inc.*, 566 F.2d at 252-53; *Crooker v. Internal Revenue Serv.*, No. 94-0755, 1995 WL 430605, at *7 (D.D.C. April 27, 1995). Although it principally applies to facts divulged by a client to his attorney, this privilege also encompasses any opinions given by an attorney to his client based on, and thus reflecting, those facts as well as communications between attorneys that reflect client-supplied information. *See Coastal States*, 617 F.2d at 863 (finding that courts can infer confidentiality when the communications suggest that "the government is dealing with its attorneys as would any private party seeking advice to protect personal interests"). The privilege applies to confidential communications made to an attorney by both high-level agency personnel and lower-echelon employees. *Upjohn Co.*, 449 U.S. at 392-97.

### 3.   The Documents are Correctly Withheld Under Exemption 5

On June 6, 2006, the defendant produced documents CE4431, CE5352-5385, and CE6755-6756 to the court for *in camera* review. Def.'s Resp. to Ct.'s Order at 1. The defendant did not produce a number of other records for several reasons. The defendant claims that it cannot provide documents CE545 and CE5919 because "they do not exist and were created through the

accidental misnumbering of pages CE546 (which should have been CE545), and CE5920 (which should have been CE5919)." *Id.* at 2.  Also, the defendant claims that it is unable to locate a non-redacted version of CE5554 and offers documents that it claims to be identical, except for the font, to CE5554.  *Id.* at 2.

As to documents C4431, CE5352-5385, and CE6755-6765, the court holds that the defendant properly withheld these documents under Exemption 5 because the documents are deliberative communications.  For example, the sections redacted in CE6755-CE6756 were properly labeled as containing "Opinions and Recommendations as to need for auditors deployed overseas."  Def.'s Mot., Ex. 2 at 92.  Furthermore, although CE4431 is not correctly labeled as "Draft Answers to Waxman," it does contain deliberations on how to provide those answers and properly falls under the defendant's description of this document as containing "Opinions and Recommendations."  *Id.* at 56.  Finally, the defendant lists CE5352-CE5385 as a "Draft Acquisition Strategy" containing "Opinions and Recommendations" withheld under the deliberative process privilege.[5]  *Id.* at 75.  Although the document has the appearance of a final copy and contains signatures of military officials, it includes a page with a blank space to be signed by a military official and also an e-mail on the first page indicating that it is a draft that still requires the signature of that military official.  Accordingly, the court is confident, from its *in camera* review, that these documents are both deliberative and predecisional.

An agency may meet its FOIA burden by providing the requester with a *Vaughn* index,

---

[5]     Although the defendant left the "Exemptions Claimed" column of its *Vaughn* index for document CE5352-5385 blank, the defendant lists the document as "Opinions and Recommendations" under the "Description" category, which is in accord with other documents withheld under Exemption 5 for deliberative process.

11

adequately describing each withheld document and explaining the exemption's relevance. *Summers*, 140 F.3d at 1080; *Vaughn*, 484 F.2d 820.  After conducting a review to assess the accuracy of the defendant's assertions, the court concludes that the *Vaughn* index was accurate and nondisclosure is justified.

With respect to documents CE545 and CE5919, in the absence of the plaintiff presenting evidence to the contrary, the court presumes that the defendant acts in good faith in asserting that these documents were misnumbered and do not exist.[6]  *SafeCard Servs.*, 926 F.2d at 1200. Finally, the court concludes that CE5554, listed as falling under the deliberative process and attorney-client privileges, is properly labeled.  Def.'s Mot., Ex. 2 at 79.  The court has compared CE4481-CE4482, CE4489-CE4490, and CE4497-CE4498 to CE5554 and concludes that these documents, except for the font, are identical.  Accordingly, because CE5554 is identical to documents that the court previously concluded were properly withheld under the deliberative process and attorney-client privileges, Mem. Op. (May 31, 2006) at 14-15, the court holds that the defendant has properly withheld this document under Exemption 5.

**B.    The Court Grants the Intervenor's Motion to
Reconsider its May 31, 2006 Order**

The intervenor argues that justice requires the court to reconsider its May 31, 2006 order with regard to CE567-CE576 and CE6610-6619.  Specifically, the intervenor argues that the defendant was required to show these documents to the intervenor before the court's *in camera*

---

[6]    Indeed, the defendant's repeated demonstrations of its carelessness in this case support this presumption.

review and the defendant's failure to do so constitutes a change of circumstances which warrant

the court's reconsideration of its order.[7]  Intervenor's Mot. at 4-5.  In opposition, the plaintiff

argues that the defendant was not required to show these documents to the intervenor and, even if

it was, the defendant did not properly evaluate the intervenor's objections under the Code of

Federal Regulations.  Pl.'s Opp'n at 6.[8]  Because the interests of justice weigh in favor of

reconsidering the court's prior order, the court grants the intervenor's motion and holds that these

documents are properly withheld under Exemption 4.

### 1.   Legal Standard for Rule 54(b) Motion to Reconsider an Interlocutory Decision

A ruling that denies a dispositive motion in part is an interlocutory judgment.  *In re*

*Executive Office of the President*, 215 F.3d 20, 22 (D.C. Cir. 2000); *United States v. Rose*, 28 F.3d

181, 185 (D.C. Cir. 1994) (ruling that "orders denying motions to dismiss are not 'final decisions'

---

[7]   "When a request is received for a record that falls under Exemption 4, that was obtained from a non-U.S. Government source, or for a record containing information clearly identified as having been provided by a non-U.S. Government source, the source of the record or information. . . shall be notified promptly of that request and afforded reasonable time (14 calendar days) to present any objections concerning the release, unless it is clear that there can be no valid basis for objection." 32 C.F.R. § 518.16(l)(1).

[8]   The plaintiff's opposition brief may not actually oppose the intervenor's request as indicated by the plaintiff's confused and contrary statements.  The plaintiff states that counsel for KBR contacted the plaintiff and told it that KBR "would be asking the [c]ourt to reconsider simply on the motion."  Pl.'s Opp'n at 2.  The plaintiff then notes that it "might not have opposed KBR's motion if it had stated that it was asking the [c]ourt to re-review the Documents CE567-576 and CE6610 in light of Exemption 4.  The [c]ourt, having already reviewed the documents once and, being in possession of them still, is in an excellent position to make a judgment on whether Documents CE567-CE576 and CE6610 contain protected Exemption 4 information."  *Id.*, n.2.  Because KBR's counsel "plainly did not incorporate those words," however, the plaintiff was unable to infer that KBR's motion constituted its request that the court reconsider its prior order.  *Id.*

. . . because such orders 'ensure[] that litigation will continue in the district court'") (quoting *Lauro Lines s.r.l. v. Chasser*, 490 U.S. 495, 498 (1989)).  A district court may revise its own interlocutory decisions "at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."  FED. R. CIV. P. 54(b); *see also Singh v. George Wash. Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005); *Cobell v. Norton*, 224 F.R.D. 266, 272 (D.D.C. 2004); *Childers v. Slater*, 197 F.R.D. 185, 190 (D.D.C. 2000) (citing FED. R. CIV. P. 60(b) Advisory Committee Notes).

The standard of review for interlocutory decisions differs from the standards applied to final judgments under Federal Rules of Civil Procedure 59(e) and 60(b).  *Compare Muwekma Tribe v. Babbitt*, 133 F. Supp. 2d 42, 48 n.6 (D.D.C. 2001) *and United Mine Workers v. Pittston Co.*, 793 F. Supp. 339, 345 (D.D.C. 1992) *with LaRouche v. Dep't of Treasury,* 112 F. Supp. 2d 48, 51-52 (D.D.C. 2000) *and Harvey v. Dist. of Columbia*, 949 F. Supp. 878, 879 (D.D.C. 1996).  In particular, reconsideration of an interlocutory decision is available under the standard "as justice requires."  *See Childers*, 197 F.R.D. at 190 (citing FED. R. CIV. P. 60(b) Advisory Committee Notes); *see also Singh*, 383 F.3d F. Supp. 2d at 101; *Cobell*, 224 F.R.D. at 272.

"As justice requires" indicates concrete considerations of whether the court "has patently misunderstood a party, has made a decision outside the adversarial issues presented to the [c]ourt by the parties, has made an error not of reasoning, but of apprehension, or where a controlling or significant change in the law or facts [has occurred] since the submission of the issue to the court."  *Cobell*, 224 F.R.D. at 272 (internal citation omitted).  These considerations leave a great deal of room for the court's discretion and, accordingly, the "as justice requires" standard amounts to determining "whether reconsideration is necessary under the relevant circumstances."  *Id*.

14

Nonetheless, the court's discretion under 54(b) is limited by the law of the case doctrine and "subject to the caveat that, where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Singh*, 383 F. Supp. 2d at 101 (internal citations omitted).

## 2. Justice Requires the Court to Reconsider its Prior Order

Because the court did not fully rule on the defendant's motion for summary judgment in its May 31, 2006 memorandum opinion, its ruling is interlocutory. *In Re Exec. Office of the President*, 215 F.3d at 22. The court now concludes that under all of the relevant circumstances, the court must reconsider its prior order.

In the FOIA context, an agency may waive the right to raise certain exemptions if it fails to raise them prior to the district court ruling in favor of the other party. *P.R. v. U.S. Dep't of Justice*, 823 F.2d 574, 580 (D.C. Cir. 1987) (stating that "agencies may not make new exemption claims to a district court after the judge has ruled in the other party's favor") (quoting *Holy Spirit Ass'n v. CIA*, 636 F.2d 838, 846 (D.C. Cir. 1980). Nonetheless, motions to reconsider interlocutory orders may allow more room for discretion in terms of waiving exemptions. *Williams v. FBI*, No. 91-1054, 1997 WL 198109, at *2 (D.D.C. Apr. 16, 1997) (noting that the rule on waiver of FOIA exemptions is unclear with regard to motions for reconsideration and "[a]rguably, the policy militating against piecemeal litigation is less weighty where the district court proceedings are not yet completed"); *but see Scheer v. U.S. Dep't of Justice*, No. 98-1613, slip op. at 405 (D.D.C. July 14, 1994) (denying a motion for reconsideration to present new exemption claims, partly because the defendant did not show "why, through the exercise of due diligence, it could not have presented this evidence before judgment was rendered").

15

Circumstances in which an agency may belatedly invoke FOIA exemptions include a substantial change in the factual context of a case, an interim development in an applicable legal doctrine, or pure mistake. *August v. FBI*, 328 F.3d 697, 700 (D.C. Cir. 2003). Furthermore, the court may, *sua sponte*, "apply the law in order to achieve a just result." *Williams*, 1997 WL 198109, at *2.

The defendant failed to notify the court that it had neglected to provide the intervenor with documents CE567-CE576 and CE6610-CE6619 prior to the court's ruling. Although this may not constitute a change in the actual facts of the case, it does constitute a change in the court's awareness of the circumstances surrounding the parties' notice and opportunity to provide substantive comments. In this case, the intervenor, and not the defendant, raises new exemption claims. The court regrets that the defendant did not properly follow procedure and present these documents for the intervenor to review before the court's ruling. In not providing these documents to KBR prior to the court's *in camera* review, the Army has prevented KBR from protecting these rights. KBR has taken action, through moving to intervene, to protect interests it perceives as threatened in this case, and the court has recognized KBR's right to protect its interests in this case. Order on Mot. to Intervene (June 22, 2004). The intervenor should not be disadvantaged or have its rights compromised from the defendant's lacks of diligence. Accordingly, because reconsideration is necessary to correct the defendant's error and afford the intervenor an opportunity to raise exemptions, the court will reconsider documents CE567-CE576 and CE6610-CE6619 under Exemption 4.

### C.   The Court Rules that These Documents are Properly Withheld under Exemption 4

The intervenor argues that documents CE567-CE576 and CE6610-CE6619 would be properly withheld under Exemption 4 because they were voluntarily provided to the defendant and

contain information that would customarily not be released to the public.  Intervenor's Mot. at 5-6.  Alternatively, the intervenor argues that, if the court were to conclude that KBR was required to provide these documents to the defendant, the court should not order their release.  *Id*. at 6.  The defendant concurs with the intervenor's position.  Def.'s Resp. to Pl.'s Opp'n at 2.  In opposition, the plaintiff argues both that the intervenor was required to submit these documents to the defendant and that the intervenor has failed to show that it would suffer substantial competitive injury if the documents were released.  Pl.'s Opp'n at 8-9.  Having reviewed these documents *in camera*, the court concludes that they were voluntarily submitted to the defendant and contain information that would not customarily be released to the public.  Accordingly, these documents are properly withheld under Exemption 4.

### 1.    Legal Standard for Exemption 4

At issue in this case is whether the documents are privileged or confidential under Exemption 4.  Exemption 4 protects the disclosure of privileged or confidential trade secrets and commercial or financial information that is obtained from a person.  5 U.S.C. § 552(b)(4); *Nat'l Parks & Conservation Ass'n v. Morton*, 498 F.2d 765 (D.C. Cir. 1974).  If the person or entity submitting the documents was required to provide the government with the information in question, the information is confidential under Exemption 4 if it would (1) impair the government's ability to obtain necessary information in the future, or (2) cause substantial harm to the competitive position of the person who submitted the information.  *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 880 (D.C. Cir. 1992) (en banc); *Nat'l Parks*, 498 F.2d at 770.  If the information was provided on a voluntary basis, it is confidential under Exemption 4 if it is of the kind that would customarily not be released to the public by the

person from whom it was obtained.  *Critical Mass*, 975 F.2d at 879.

### 2.    These Documents are Properly Withheld Under Exemption 4

### a.    The Documents were Voluntarily Submitted to the Defendant

In this case, the intervenor argues that it was not required to submit the information

contained in documents CE567-CE576 and CE6610-CE6619 to the defendant because this

information was provided as part of the process of administrating its contract with the Army,

rather than in an effort to obtain it.  Intervenor's Reply at 8; Heinrich Decl. ¶ 3 (stating that the

information was "provided by KBR to the Corps on a voluntary basis as part of KBR's efforts to

work cooperatively with the Corps regarding the administration of its contract").  In opposition,

the plaintiff cites the Code of Federal Regulations, which includes "invitations for bids, requests

for proposals, and contracts," as examples of authorities "not voluntary in nature" and concludes

that "KBR cannot escape this statutory definition."  Pl.'s Opp'n at 8 (quoting 32 C.F.R. §

518.16(l)).

In determining whether the intervenor was required to submit the information or whether it

was provided voluntarily, "actual legal authority, rather than the parties' beliefs or intentions,

governs judicial assessments of the character of submissions."  *Ctr. For Auto Safety v. Nat'l

Highway Traffic Admin.*, 244 F.3d 144, 149 (D.C. Cir. 2001).  An example of information that

would be considered "required" are price elements necessary to win a government contract.

*McDonnell Douglas Corp. v. NASA*, 895 F. Supp. 316, 318 (D.D.C. 1995).  The relevant inquiry

in this context is "whether the specific price elements and other information provided by [the

submitter] were required to be submitted before [the agency] would award the contract."

*McDonnell Douglas Corp. v. NASA*, 981 F. Supp. 12, 15 (D.D.C. 1997).

18

Having reviewed these documents *in camera*, the court concludes that the information contained in them was submitted voluntarily. The intervenor provided the information in these documents not in an effort to bid for or obtain a contract but to negotiate the administration of the contract. The intervenor provided this information after it had been awarded a contract by the defendant, and the discussion contained in these documents concerns ongoing contract implementation, not bid proposals or contract procurement.

### b.   The Information Contained in these Documents is of the Kind Customarily not Released to the Public

Because the information was submitted voluntarily, the intervenor argues that the court need only decide whether the information was of the type not customarily released to the general public. Intervenor's Mot. at 6. The plaintiff assumes that the court would conclude that the intervenor was required to submit information to the defendant and argues that the intervenor has not met its burden for showing that information contained in these documents is confidential. Pl.'s Mot. at 9.

If the intervenor voluntarily submitted the information, then the party that invoked Exemption 4 must "meet[] the burden of proving the provider's custom" to establish that the information "is of the kind that would customarily not be released to the public by the person from whom it was obtained." *Critical Mass*, 975 F.2d at 879. This "customary treatment" standard is dependant on how the information is treated by the individual submitter rather than how it is treated by the industry as a whole. *Id*. at 879, 880; *see also Ctr. For Auto Safety*, 244 F.3d at 148 (noting that "in assessing customary disclosure, the court will consider how the particular party customarily treats the information, not how the industry as a whole treats the information"). This standard allows for some disclosures, so long as these disclosures were not made to the general

19

public.  *See Critical Mass*, 975 F.2d at 880 (en banc) (citing circuit panel court decision, *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 830 F. 2d 278, 280-81 (D.C. Cir. 1987)), which noted that information had been provided to other parties under nondisclosure agreements, but had not been provided to the general public).  The submitter may meet its burden by supplying declarations as to customary treatment.  *See Auto Safety*, 244 F.3d at 153 (directing the district court to review the submitter's declarations and any relevant responses that they might supply); *Parker v. Bureau of Land Mgmt.*, 141 F. Supp. 2d 71, 79 (D.D.C. 2001) (noting declarations made by submitters that described the limited distribution within the company on a "need to know" basis and attached as exhibits the confidentiality agreements that were entered into with outside contractors).

In this case, the intervenor submitted a declaration stating that "[t]hese documents contain sensitive commercial and financial information regarding KBR's procedures for selecting its subcontractors and detailed pricing and equipment information.  KBR does not customarily release this type of information to the public."  Heinrich Decl. ¶ 4.  This declaration demonstrates that the information contained in these documents was customarily not released to the public.  Furthermore, the court has conducted an *in camera* review of these documents and concludes the intervenor has adequately described the information in its declaration.  This information, therefore, is properly withheld under Exemption 4.

## IV.   CONCLUSION

For all of the forgoing reasons, the court grants the defendant's motion for summary judgment.  The court also grants the intervenor's motion to reconsider and issues a revised order

authorizing the defendant to withhold documents CE567-CE576 and CE6610-CE6619 under

Exemption 4.  An Order directing the parties in a manner consistent with this Memorandum

Opinions is separately and contemporaneously issued this 12th day of December 2006.


                                                 RICARDO M. URBINA
                                         United States District Judge